UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
:
ROBERT HILDERBRANDT, :
: 13-CV-1955 (ARR) (VVP)
Plaintiff, :
:
: NOT FOR PRINT OR
-against- : ELECTRONIC
: PUBLICATION
CITY OF NEW YORK, POLICE OFFICER :
THOMPSON (Shield No. 2354), 100th Precinct, and : OPINION & ORDER
POLICE OFFICER CLAUDIO DIAZ (Shield No. 6621), :
100th Precinct, :
:
Defendants. :
:
------------------------------------------------------------------- X

ROSS, United States District Judge:

Plaintiff, Robert Hilderbrandt, has brought a variety of constitutional and state law claims against Police Officer Rhone Thompson, Police Officer Claudio Diaz, and the City of New York in connection with his arrest on January 9, 2012. Defendants move for summary judgment on the claims against the individual defendants: false arrest, excessive force, assault and battery, First Amendment retaliation, and intentional infliction of emotional distress.[1] For the reasons set forth below, defendants' motion is granted in part and denied in part.

## BACKGROUND

On January 9, 2012, at 12:22 p.m., George Iacobelli, a tenant of the Baxter Hotel, a single occupancy hotel in Queens, New York, telephoned the New York Police Department to report that someone had been tampering with his room. Defs.' Statement of Undisputed Facts Pursuant

---

[1] Defendants do not move for summary judgment on plaintiff's Monell claim against the City of New York. See Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). Thus, the court does not consider municipal liability under 42 U.S.C. § 1983 at this juncture.

1

to Local Civil Rule 56.1 ("Defs. Facts"), Dkt. #31, ¶¶ 6-7; Pl.'s Objections and Resp. to Defs. Facts ("Pl. Facts"), Dkt. # 35, ¶¶ 6-7. Officers Rhone Thompson and Claudio Diaz were on duty at the time and responded to the call. Defs. Facts ¶ 8; Pl. Facts ¶ 8.

Upon arriving at the Baxter Hotel, the defendant officers were met outside by Mr. Iacobelli. Mr. Iacobelli told them that some of his possessions, including a television, were missing, and that "management was stealing his stuff." Defs. Facts ¶ 10.[2] Officers Thompson and Diaz followed Mr. Iacobelli to his room on the fourth floor of the hotel. Defs. Facts ¶¶ 11-13; Pl. Facts ¶¶ 11-13.

From his office on the first floor of the hotel, plaintiff saw the officers arrive. Defs. Facts ¶ 13; Dep. of Robert Hilderbrandt ("Pl. Dep.") 76. Plaintiff served as the Baxter Hotel's manager and head of security. Pl. Dep. 42. Soon after the officers followed Mr. Iacobelli into the building, plaintiff made his way to the fourth floor. Defs. Facts ¶¶ 13-14; Pl. Facts ¶¶ 13-14. There, Officer Thompson stood outside Mr. Iacobelli's room, while Officer Diaz stood just inside the door. Pl. Dep. 81-82; Dep. of Claudio Diaz ("Diaz Dep.") 21-22.

The stories of plaintiff and defendants diverge significantly at this point. Drawing all inferences and resolving all credibility issues in favor of the non-moving plaintiff, as required on this motion, the facts significant to the resolution of the issues are as follows.

As plaintiff approached Mr. Iacobelli's room, he inquired of the officers whether there was a problem. Pl. Dep. 86. Officer Thompson told plaintiff, "[i]t doesn't concern [you]." Id. Plaintiff explained to the officers that he was the building manager and in charge of security. Id.

---

[2] Plaintiff contests this testimony on the ground that it is inadmissible hearsay. Pl. Facts ¶¶ 9-10. Because the testimony does not seek to prove that management actually had stolen Mr. Iacobelli's possessions, but rather goes to the effect that Mr. Iacobelli's statement had on the officers' state of mind, it is not hearsay. See United States v. Certified Envt'l Servs., Inc., 753 F.3d 72, 89 (2d Cir. 2014).

After plaintiff tried to peer into Mr. Iacobelli's room, Officer Thompson told him to "step back." Id. at 89. Plaintiff complied. Id. at 90.

After stepping back, plaintiff continued speaking with Officer Thompson, insisting that he had to know whether there was a problem. Id. at 91. At first, Officer Thompson repeated that there was nothing wrong. Id. at 93. After inquiring several more times, plaintiff concluded that "there must be some kind of a reason why you got two patrolmen here with this man. [If there is no problem . . .] you people are just visitors. And in this building, Mr. Iacobelli knows very well there are no visitors permitted. So if you are here for a legal matter [it] is one thing, if you're here as visitors, you will have to leave the premises." Id. At some point after plaintiff made this statement, Officer Thompson stated that a television had been stolen. Id. at 91. Pointing to a surveillance camera mounted on the ceiling, plaintiff responded that the officers' "problems [were] over," because a review the videotape would disclose the identity of the perpetrator. Id.

As plaintiff pointed to the camera, the officers moved in to arrest him. Officer Diaz grabbed his raised arm, and Officer Thompson said he was "tired of [plaintiff's] arrogance." Id. at 92. Plaintiff asked why he was being arrested, and Officer Diaz said "quit resisting." Id. Plaintiff then "just lowered [his] arm." Id. When instructed to put his hands behind his back, he did so immediately. Id. at 107-08. Until this point, plaintiff had spoken in a moderate tone and had not raised his voice. Id. at 101-02; Decl. of Robert Hilderbrandt ("Pl. Decl."), Dkt. #36, Ex. 5, ¶ 2. At no time did the defendant officers issue any orders to plaintiff other than their initial request that he step back. Pl. Dep. 98.

After plaintiff had been handcuffed, he was "roughed up a bit." Id. at 110. Plaintiff was pushed from one side of the hallway to the other and ultimately was pinned against one wall by Officer Thompson. Id. at 106, 111, 113. Officer Thompson's left elbow was on plaintiff's right

3

shoulder, with plaintiff's left shoulder being "crushed into the wall." Id. at 111-12. Plaintiff did not struggle, Id. at 111, yet Officer Thompson "kept grinding and grinding" his shoulder. Id. at 112. Plaintiff complained that the officer was hurting his right shoulder, which had previously been injured. Id. Plaintiff emerged from the incident with a lasting injury to his left shoulder. He was unable to raise his left arm in the days after his arrest and continued to experience pain at the time of his deposition, more than two years later. Id. at 114. Plaintiff also experienced pain as a result of tight handcuffs, which caused soreness to his wrists and bruising to his thumbs that lasted "a couple days." Id. at 146, 153, 162-63. After being held against the wall for approximately eleven minutes, plaintiff was escorted out of the Baxter Hotel and into a patrol car. Id. at 122; Decl. of Aimee Lulich, Ex. H ("Video"), at 1:41:32-1:52:50.

As noted, defendants paint a very different picture of their interaction with plaintiff at the hotel. According to the defendants' version of events, plaintiff approached Mr. Iacobelli's room and began to "talk over" Mr. Iacobelli. Diaz Dep. 54; Dep. of Rhone Thompson ("Thompson Dep.") 21. At one point, plaintiff interjected that what Mr. Iacobelli was relating to the officers was not true. Diaz Dep. 34. Plaintiff also ignored the officer's requests that he stop talking and step away from them. Id. at 35-37; Thompson Dep. 30. Officer Thompson told plaintiff that if plaintiff did not stop interrupting the investigation, he would be arrested. Diaz Dep. 38. When plaintiff did not stop, Officer Thompson moved to arrest him. When plaintiff resisted, Officer Diaz had to assist Officer Thompson in pulling plaintiff's hands behind his back. Diaz Dep. 38-39; Thompson Dep. 32. Officer Diaz testified that he simply held the plaintiff against the wall until they exited the building. Diaz Dep. 42.

The parties agree that plaintiff was charged with obstructing governmental administration, disorderly conduct, and resisting arrest. Defs. Facts ¶ 22; Pl. Facts ¶ 22. The

4

certificate of disposition from his arraignment indicates that plaintiff accepted an adjournment in contemplation of dismissal on all charges. Defs. Facts ¶ 22; Pl. Facts ¶ 22. After nine hours in custody, plaintiff was released.

## DISCUSSION

**1.     Standard for Summary Judgment**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues, but to determine whether there is a genuine issue to be tried. Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 249 (1986). "While genuineness runs to whether disputed factual issues can reasonably be resolved in favor of either party, materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)) (internal quotation marks and ellipses omitted).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d Cir. 2011) (quoting In re Bennett Funding Grp., Inc., 336 F.3d 94, 99 (2d Cir. 2003)); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party carries the burden of proving that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-24 (2d Cir. 1994).

5

Once this burden is met, in order to avoid the entry of summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir. 1998). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).

**2.     False Arrest**

Plaintiff asserts false arrest claims under both 42 U.S.C. § 1983 and New York common law. A § 1983 claim for false arrest, asserting a deprivation of the Fourth Amendment right to be free from unreasonable seizures, is "substantially the same" as a claim for false arrest under New York state law. Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). Probable cause to arrest is a complete defense to both claims. Id.

Probable cause exists where an arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006) (quoting Weyant, 101 F.3d at 852). The Fourth Amendment requires only that probable cause exist as to any crime, not that it exist for each crime charged or even for any of the particular crimes actually charged. Id. at 154.

Defendants argue that there was probable cause to arrest plaintiff for obstruction of governmental administration ("OGA") in the second degree. A person commits second degree OGA when "he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an

6

official function, by means of intimidation, physical force or interference . . . ." N.Y. Penal Law § 195.05. "The elements of the offense are: 1) intent; 2) obstruction or impairment of a government function, or preventing or attempting to prevent the performance of that function by 3) physical interference." Esmont v. City of New York, 371 F. Supp. 2d 202, 210 (E.D.N.Y. 2005) (citing People v. Stumpp, 493 N.Y.S.2d 679, 680 (Dist. Ct. Suffolk Cnty. 1985)).

Courts have made clear that the statute requires physical interference with police action to support an OGA arrest. Wood v. Town of E. Hampton, Civil Action No. 08-CV-4197, 2010 WL 3924847, at *11-*12 (E.D.N.Y. Sept. 30, 2010). The physical requirement need not be satisfied by the use of physical force, but can be met instead by the physical encroachment on police officers' work or by the performance of threatening and distracting movements near officers. See People v. Baltes, 904 N.Y.S.2d 554, 557 (App. Div. 2010) (finding support for OGA conviction where belligerent defendant came "increasingly closer to [officers attempting to perform field sobriety test on another individual] and continued to interfere, despite admonitions to remain calm and quiet"); In re Garrick B., 816 N.Y.S.2d 462, 463 (App. Div. 2006) (holding that conduct constituted OGA where individual "interrupted a police interview of a complainant by screaming obscenities at the police, and then refused to comply with the officers' directives to leave, physically menaced an officer, screamed, cursed, flailed his arms and struggled with the officers"); People v. Tarver, 591 N.Y.S.2d 907, 907 (App. Div. 1992) (finding physical interference where "defendant approached [an officer struggling to arrest suspect] from behind in a threatening manner, cocking his arm as if to strike"). Failing to obey a police order, in itself, will not satisfy the requirements of the statute. However, "[w]hen failing to obey the order creates some other hazard or interference, it can rise to the level of obstruction necessary for obstructing government administration." Dowling v. City of New York, No. 11-CV-4954 (NGG)

7

(RML), 2013 WL 5502867, at *4 (E.D.N.Y. Sept. 30, 2013) (finding that failure to obey multiple orders to back up did not give probable cause for OGA arrest and that defendant officer "would also have had to believe that Plaintiff made at least an attempt to physically interfere with the other officers' actions" for court to find otherwise).

There are cases in which courts have found the OGA statute satisfied by interference whose physical nature appears to be limited. These cases typically involve words that have an interfering effect combined with unwarranted physical intrusion into an area of police activity. See, e.g., Trapp-Miley v. City of New York, No. 09-CV-3933 (KAM) (RLM), 2012 WL 1068084, at *5-*6 (E.D.N.Y. Mar. 29, 2012) (finding probable cause for OGA arrest where plaintiff stuck her head through window into non-public area of police station and threatened a victim who was to give statement to police); In re Davan L., 689 N.E.2d 909, 911 (N.Y. 1997) (holding that juvenile's actions constituted OGA when he announced the presence of undercover police officers after he "intruded himself into the specific area of police activity" in disregard of police directive); People v. Covington, 793 N.Y.S.2d 384, 386, 389 (App. Div. 2005) (upholding OGA conviction where defendant "interjected himself into an obvious, defined area of police activity" and yelled "the police are coming" in front of the apartment building the police unit was targeting).[3] Such cases, however, have not disturbed the rule that "words alone, even abusive ones, cannot give rise to probable cause to arrest for obstructing governmental administration as a matter of law." Lee v. McCue, No. 04-CIV-6077 (CM), 2007 WL 2230100, at *5 (S.D.N.Y. July 25, 2007) (citing People v. Case, 365 N.E.2d 872, 875 (N.Y. 1977)).

---

[3] The parties disagree over a statement in Dowling that "[t]here are some limited exceptions to the general rule requiring physical interference." 2013 WL 5502867, at *5. The cases that Dowling cites for this proposition all involve individuals who inserted themselves into areas of police activity and, from there, spoke words that further interfered with police activity. Each case was mindful of the steadfast rule that words alone are insufficient to establish the actus reus of OGA.

8

Here, according to plaintiff's account of the facts, plaintiff approached Officer Thompson and inquired into the nature of the problem. Pl. Dep. 85. Officer Thompson told him that the matter "didn't concern him," id. at 86, and ordered that he step back. Id. at 89. Plaintiff complied, id. at 90, and continued to explain that as the manager of the building, he needed to know whether there were problems that could affect the other tenants. Id. at 91. When plaintiff was told that a television had been stolen, he pointed to a surveillance camera and explained that the officers could look at the videotape in order to identify the perpetrator. Id. at 91-92. The officers then arrested him. Id. at 92. Plaintiff testified that he complied with the only directive issued to him by the officers, id. at 89-90, 98, and that he spoke in a moderate tone throughout. Id. at 101-02; Pl. Decl. ¶ 2. Surveillance video does not show plaintiff making any movements that are clearly threatening. Video 1:39:19-1:40:39.

These facts, when viewed in the light most favorable to the non-moving plaintiff, tell of a discussion between police officers and the calm and compliant manager of a building regarding potential problems in the building that he oversees. This version of the facts does not reveal any conduct that could be reasonably viewed as physical interference under the OGA statute.

Defendants' arguments to the contrary are misplaced, reflecting improper characterization of the facts relevant to summary judgment and incorrect characterization of the governing law.

For example, defendants argue that plaintiff physically interfered with the officers' investigation by speaking over Mr. Iacobelli and by disregarding the officers' orders that he be quiet and move away from the officers. Defs.' Mem. of Law in Supp. of Defs.' Mot. for Summ. J. ("Defs. Mem."), Dkt. #33, at 11. These assertions flatly contradict plaintiff's testimony, however, and thus cannot be considered on this summary judgment motion. Further, defendants'

9

remaining assertions set forth no facts that would lead a reasonable officer to believe that plaintiff physically interfered with the defendant officers' duties. Defendants suggest that plaintiff's presence in the hallway could amount to physical interference and that plaintiff's stance as he leaned against the wall "could reasonably be interpreted as threatening." Id. at 12. But the mere presence and posture of plaintiff—particularly given the assumed facts that plaintiff remained calm and compliant throughout the encounter—would not lead reasonable officers to believe that plaintiff was physically interfering with their investigation.

These factual shortcomings are compounded by legal ones. Defendants argue that "[u]nder New York law, 'merely approaching the police, or speaking during the course of a police action, or disregarding police instructions will support a conviction for OGA.'" Id. at 9 (quoting Rasmussen v. City of New York, 766 F. Supp. 2d 399, 403 (E.D.N.Y. 2011)). The quoted portion of Rasmussen is pure dicta, however, which itself is unsupported by the three cases it cites. See, e.g., Husbands ex rel. Forde v. City of New York, No. 05 Civ. 9252 (NRB), 2007 WL 2454106, at *12-*13 (S.D.N.Y. Aug. 16, 2007), aff'd, 335 F. App'x 124 (2d Cir. 2009) (finding probable cause for OGA arrest where the plaintiff attempted to speak with and move toward her brother, whom officers were struggling to arrest and whom the officers suspected of having a gun); Decker v. Campus, 981 F. Supp. 851, 858 (S.D.N.Y. 1997) (finding probable cause for OGA arrest where plaintiff failed to comply with a deputy sheriff's directive to "step back" from an accident scene and "physically broke away from the sheriff," and where plaintiff touched and spoke to rescue worker who was trying to save the life of woman injured in the accident); Tarver, 591 N.Y.S.2d at 907 (upholding OGA conviction where defendant approached police officer in threatening manner and raised arm "as if to strike"). Indeed, in Rasmussen itself, probable cause for the OGA arrest was premised on the plaintiff's attempts to physically insert

herself between police officers and her handcuffed brother and to break past an officer into a room from which she had already been removed. 766 F. Supp. 2d at 403-04. All of these cases involved a clear element of physical interference, and none justifies defendants' reliance on the unsupported dicta in Rasmussen.

Trapp-Miley, which defendants describe in detail, Defs. Mem. 9, is similarly unavailing. In that case, the plaintiff stuck her head through a window into a non-public area of a police station where the victim of a crime allegedly committed by the plaintiff's son was sitting. Trapp-Miley, 2012 WL 1068084, at *5. The plaintiff then proceeded to threaten the victim that the plaintiff's son would press counter-charges if the victim pressed charges against her son. Id. Given the totality of the circumstances, the court found the plaintiff's conduct "sufficiently physical in nature to give defendants probable cause to arrest plaintiff for" OGA. Id. The circumstances of Trapp-Miley, involving threatening speech spoken from a vantage point that the plaintiff was unauthorized to occupy, are a far cry from the circumstances here, where plaintiff testified that he was in the hallway of the Baxter Hotel in his capacity as building manager, calmly inquiring into the nature of the problem at hand.

In sum, when viewed in the light most favorable to the plaintiff, the facts reveal no conduct that constitutes physical interference under the OGA statute. Without any evidence of such conduct, the court cannot conclude as a matter of law that the defendant officers had probable cause to arrest plaintiff for OGA.

This conclusion is bolstered by the lack of evidence that would support a reasonable officer's belief that plaintiff intended to obstruct the investigation of Officers Thompson and Diaz. In evaluating whether there was probable cause for an OGA arrest, a court recognizes that officers base their assessment of an individual's intent on the individual's "words and actions."

11

Dowling, 2013 WL 5502867, at *4. Because assessments of both physical interference and intent to interfere look to plaintiff's words and actions, the two inquiries overlap. Here, just as plaintiff's version of the facts contains no words or actions that amount to physical interference, it is similarly devoid of words or actions that would support a reasonable officer's belief that plaintiff intended to obstruct the investigation of Officers Thompson and Diaz.

Defendants argue, in the alternative, that even if the court is unable to grant summary judgment because of the existence of probable cause, the court should grant summary judgment because the defendant officers are entitled to qualified immunity for their arrest of plaintiff. The doctrine of qualified immunity shields government officials from liability for civil damages if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known," Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982), or if "it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." Mandell v. Cnty. of Suffolk, 316 F.3d 368, 385 (2d Cir. 2003). In the context of false arrests claims, "[a]n officer's determination is objectively reasonable if there was 'arguable' probable cause at the time of arrest—that is, if 'officers of reasonable competence could disagree on whether the probable cause test was met.'" Jenkins v. City of New York, 478 F.3d 76, 87 (2d Cir. 2007) (quoting Lennon v. Miller, 66 F.3d 416, 423-24 (2d Cir. 1995)); see Oliveira v. Mayer, 23 F.3d 642, 649 (2d Cir. 1994) (describing the possibility that officer is entitled to qualified immunity for false arrest "when he reasonably believes that a reasonably prudent police officer would have acted even though a reasonably prudent police officer would not have acted").

Here, the question of "arguable" probable cause, just like the question of probable cause, depends on whose version of facts one believes. See Weyant, 101 F.3d at 858 (determining that

facts are so "sharply disputed" that question of qualified immunity "cannot be resolved as a matter of law"). Reasonable officers would not disagree that there was no probable cause for the OGA arrest of a building manager who conducted himself in the manner that plaintiff has related. To assert otherwise would be to disbelieve plaintiff's version of the facts. Thus, defendants are not entitled to summary judgment on plaintiff's false arrest claims.

3.  **Excessive Force**

Plaintiff alleges that defendants committed two distinct violations of the Fourth Amendment's prohibition against using an unreasonable degree of force to carry out an arrest. In assessing § 1983 claims of excessive force, courts must apply an objective test, judging the use of force "from the perspective of a reasonable officer on the scene," and with the understanding that officers have to make "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Graham v. Connor, 490 U.S. 386, 396-97 (1989); see also Tracy v. Freshwater, 623 F.3d 90, 96 (2d Cir. 2010).

Plaintiff's first allegation of excessive force can be disposed of with relative ease. Plaintiff claims that excessively tight handcuffs caused soreness to his wrists and bruises to his thumbs that lasted "a couple days." Pl. Dep. 146, 153, 162-63. These injuries are insufficient to constitute a claim for excessive force by handcuffing, as such a claim requires evidence of "some injury beyond temporary discomfort." Lynch ex rel. Lynch v. City of Mount Vernon, 567 F. Supp. 2d 459, 468 (S.D.N.Y. 2008) (reviewing caselaw); see, e.g., Matthews v. City of New York, 889 F. Supp. 2d 418, 443 (E.D.N.Y. 2012) ("[I]n order to withstand summary judgment, [plaintiffs] must provide medical evidence that the handcuffs caused serious, long-lasting, or

13

persistent injury."); Wilder v. Vill. of Amityville, 288 F. Supp. 2d 341, 344 (E.D.N.Y. 2003), aff'd, 111 F. App'x 635 (2d Cir. 2004) (deciding as a matter of law that allegation of excessively tight handcuffing "resulting in the inflammation of Plaintiff's wrists for a period of twenty-four hours and requiring no medical attention" did "not rise to the level of objective excess that reasonable police officers would consider to be unlawful conduct in an arrest situation").

Plaintiff's second allegation of excessive force raises much more serious questions, ultimately precluding summary judgment dismissing plaintiff's excessive force claim against Officer Thompson. According to plaintiff, after being handcuffed and "bounced around" the Baxter Hotel hallway, plaintiff found himself pinned against the wall, with Officer Thompson's left elbow grinding into his right shoulder. Pl. Dep. 111. During this maneuver, plaintiff's left shoulder was being "crushed into the wall." Id. at 112. Plaintiff testified that he did not struggle then, nor had he struggled when the officers first moved to handcuff him. Id. at 107-08, 111. Despite plaintiff's complaints of pain, Officer Thompson "kept grinding and grinding" his shoulder. Id. at 112. Plaintiff claims that he suffered a lasting injury to his left shoulder that continued to cause him pain at the time of his deposition, more than two years after his arrest. Id. at 114.

Video surveillance of the incident may cast some doubt on the degree to which plaintiff was "roughed up" by the officers. Id. at 110. Plaintiff may not have immediately submitted to handcuffing, Video 1:40:39-1:41:37, and for much of the eleven minutes during which plaintiff was handcuffed in the hallway, an officer appears to be simply holding plaintiff against the wall with an extended arm. Id. at 1:42:22-1:52:50. However, there is a portion of the video in which, after plaintiff is placed in handcuffs, the officer does appear to be using some degree of force against plaintiff that may well be consistent with plaintiff's account of the incident. Id. at

14

1:41:30-1:42:22. Ultimately, the video is not clear enough to prevent the court from crediting plaintiff's allegations for the purposes of this summary judgment motion. Cf. Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

The question thus remains whether Officer Thompson used "more force than was necessary to subdue" plaintiff. Curry v. City of Syracuse, 316 F.3d 324, 332 (2d Cir. 2003). Plaintiff's version of events, under which plaintiff was handcuffed and not resisting the officers, would suggest that little force was required at all. See Castellar v. Caporale, Civil Action No. CV-04-3402 (DGT), 2010 WL 3522814, at *7 (E.D.N.Y. Sept. 2, 2010) ("When Svinos allegedly pushed plaintiff against the wall, plaintiff was already handcuffed and therefore restrained. Although it is well-established that 'not every push or shove . . . violates the Fourth Amendment,' courts have also held that even a single push may be deemed unreasonable where the arrestee is handcuffed and fully cooperating with the police officers." (internal citation omitted)). While defendants dispute plaintiff's characterization, plaintiff's assertions must be credited at this stage.

This same material dispute of facts precludes summary judgment on this excessive force claim on qualified immunity grounds as well. At times, the facts presumed true for summary judgment purposes place police officers' conduct on "the hazy border between excessive and acceptable force." Brosseau v. Haugen, 543 U.S. 194, 201 (2004) (quoting Saucier v. Katz, 533 U.S. 194, 206 (2001)). In such a case, the inability to find that there was no excessive force as a matter of law may not preclude a finding that the officers are nonetheless entitled to qualified immunity on the excessive force claim. Here, however, as with the false arrest claim above,

15

qualified immunity's reasonableness question turns on the accepted version of the facts. Reasonable officers would not disagree that it is unnecessary to "grind" a handcuffed and non-resistant arrestee against a wall. Plaintiff's excessive force claim against Officer Thompson thus survives summary judgment.

### 4. Assault and Battery

Defendants argue that plaintiff's assault and battery claim should be dismissed on the same grounds as those advanced for dismissal of plaintiff's § 1983 excessive force claim. As defendants' arguments have fallen short with respect to the excessiveness of "grinding" plaintiff's shoulder against a wall, plaintiff's assault and battery claim with respect to the same conduct is not subject to dismissal on summary judgment.

In addition, "[u]nder New York law, an unlawful arrest generally will constitute assault and battery." Rubio v. Cnty. of Suffolk, No. 01-CV-1806 (TCP), 2007 WL 2993830, at *4 (E.D.N.Y. Oct. 9, 2007) (citing Johnson v. Suffolk Cnty. Police Dep't, 665 N.Y.S.2d 440, 440-41 (App. Div. 1997)). Because the court has denied summary judgment on plaintiff's false arrest claim, it must also deny summary judgment on any assault and battery claim that turns on the unlawfulness of the arrest.

### 5. First Amendment Retaliation

A plaintiff claiming First Amendment retaliation must prove that "(1) he has an interest protected by the First Amendment; (2) defendants' actions were motivated or substantially caused by his exercise of that right; and (3) defendants' actions effectively chilled the exercise of his First Amendment right." Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001). Here, it is

not necessary to address the first two elements, because plaintiff presents no evidence satisfying the third element, which requires that his First Amendment rights were "actually chilled." Id.; see Wood, 2010 WL 3924847, at *7 (dismissing case because complaint did not contain "any factual allegations setting forth specific instances in which Plaintiff 'desired to exercise [his] First Amendment rights but was chilled by' the alleged conduct of" defendants (quoting Mangano v. Cambariere, No. 04 Civ. 4980 (SCR) (GAY), 2007 WL 2846418, at *2 (S.D.N.Y. Sept. 27, 2007))). While plaintiff's memorandum in opposition to summary judgment states that his speech was chilled because he "no longer spoke to Defendants about . . . Iacobelli's complaint or about solving the crime that may have occurred," Pl.'s Mem. of Law in Opp'n to Defs.' Mot. for Summ. J., Dkt. #34, at 24, this is unsupported by any citation to the record. Moreover, there is evidence that plaintiff did, in fact, continue speaking with the defendant officers about their investigation. While being handcuffed, plaintiff protested to the officers that he needed to know whether there was some kind of emergency requiring action by him. Pl. Dep. 105. After being handcuffed, he continued to speak with the officers, expressing "a lot of personal grief." Id. at 115. Plaintiff identifies no instance in which he "desired to exercise [his] First Amendment rights but was chilled by" the officers' conduct. Wood, 2010 WL 3924847, at *7. As such, the court dismisses plaintiff's two First Amendment retaliation claims.

### 6. Intentional Infliction of Emotional Distress

Plaintiff does not respond to defendants' argument for dismissal of his two claims for intentional infliction of emotional distress ("IIED"). "Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe

17

emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999). Plaintiff has not identified any evidence that would allow a finding in his favor on any of these elements at trial. See Husbands, 2007 WL 2454106, at *4 ("[I]f the nonmoving party does not present evidence from which a reasonable jury could return a favorable verdict, then summary judgment is appropriate.").

Furthermore, "[t]he New York Court of Appeals has strongly cautioned against allowing emotional distress claims to be brought where other tort remedies are available." Moore v. City of New York, 219 F. Supp. 2d 335, 339 (E.D.N.Y. 2002) (citing Fischer v. Maloney, 373 N.E.2d 1215 (N.Y. 1978)). Because the conduct at issue on plaintiff's IIED claims is identical to that which underlies his claims for false arrest and assault and battery, dismissal of his IIED claims is appropriate for this reason as well. See id. at 340 (dismissing IIED claim that "overlaps with traditional tort claims").

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is granted in part and denied in part. Plaintiff's claims for First Amendment retaliation and IIED are dismissed, as are any excessive force or assault and battery claims related to plaintiff's handcuffing. Plaintiff's false arrest claims, excessive force and assault and battery claims (other than those relating to his handcuffing), and those claims unaddressed in defendants' motion remain.

SO ORDERED.

\_\_/s/_____
Allyne R. Ross
United States District Judge

Dated: September 11, 2014
Brooklyn, New York